# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, O'Brien and Chaney
Argued at Lexington, Virginia


SANDRA DENISE CAMPBELL REID

                                          MEMORANDUM OPINION* BY
v.        Record No. 0413-22-3            JUDGE MARY GRACE O'BRIEN
                                              APRIL 4, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
W. Chapman Goodman, Judge

(Dana R. Cormier; Dana R. Cormier, P.L.C., on brief), for appellant.
Appellant submitting on brief.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General; Justin B. Hill, Assistant Attorney General, on
brief), for appellee.


After a bench trial, the Circuit Court of Augusta County convicted Sandra Denise Campbell

Reid (appellant) of felony animal cruelty, in violation of Code § 3.2-6570(F), and sentenced her to

two years' imprisonment, all suspended.[1]  On appeal, appellant challenges the sufficiency of the

evidence to sustain her conviction.  For the following reasons, we affirm.

## BACKGROUND

In early spring 2019, appellant moved to an Augusta County campground with her pit bull

mix, Tora.  Dawn Bridget Jones, appellant's neighbor, testified that Tora appeared "fairly healthy"

at that time.  However, "over the course of a couple of months," Jones noticed that Tora was losing

weight and was "looking kind of . . . lean."  Jones saw Tora outside nearly daily when she returned

---

\* This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] Appellant was also convicted of two misdemeanor offenses not at issue in this appeal.

from work at 3:00 p.m.  Jones never saw anyone feed Tora or noticed any "food or water put outside the camper for" the dog.

On July 5, 2019, Tora "tried to approach" Jones.  Tora's hind leg "was so swollen . . . that [she] could barely make it up to" Jones, stumbling repeatedly.  Tora "acted like [she] wanted something," so Jones gave her a small bowl of water.  Tora drank some water but "not a lot."  Jones also saw Tora try to eat some nuts on the ground.

Jones called Augusta County Animal Control that day to report Tora's condition.  Animal Control Officer Bill Hobgood found Tora laying under Jones's camper.  He photographed Tora at the scene and took the dog to a veterinary clinic.  Officer Hobgood spoke to appellant by phone, and she acknowledged ownership of Tora.

Dr. Weston Mims examined Tora at the veterinary clinic.  Dr. Mims, who qualified as an expert on the diagnosis and prognosis of dogs, testified that Tora was non-ambulatory and "completely emaciated."  On a scale of one to nine, with one being the most emaciated, Dr. Mims categorized Tora as a one.  Tora had a "heavy flea infestation," a mild fever, and showed symptoms of dehydration and cardiac insufficiency; she displayed weakness, apathy, and a "complete lack of muscle."  Dr. Mims "could see virtually every bone" in Tora's body.  He concluded that it would have taken "[m]onths at least" for Tora to have gone from a "healthy body condition" to "this level of emaciation."

Additionally, Tora's left hind leg was "severely enlarged" from the foot to the hip. Dr. Mims concluded that "there was likely cellulitis in the limb" and that the cellulitis could have been caused by cancer or "soft tissue infections from an unknown origin."  He characterized the condition of her leg as "very, very severe."

When Dr. Mims spoke with appellant by phone, she again acknowledged ownership of Tora.  He told appellant that Tora's prognosis was "[v]ery poor[,] . . . if not grave."  Dr. Mims did

not think that she could survive surgical procedures because she was "severely ill." In consultation with Dr. Mims, appellant decided to have Tora euthanized that day.

On cross-examination, Dr. Mims stated that he did not reach a conclusion as to the cause of either Tora's weight loss or her leg injury. He explained that when he is "presented with a dog with basically limited or no clinical history," he cannot assess whether the dog is emaciated because it had not been offered food or had been offered food but did not eat. Dr. Mims opined that Tora would have died if she did not receive medical treatment.

Appellant testified in her defense that Tora had belonged to her mother and she assumed responsibility for the dog when her mother died. According to appellant, she fed Tora twice a day and took her for walks "three or four times a day when the weather was nice."

Appellant stated that in late April 2019, she noticed Tora "was not eating [her] food" and she switched from dry to canned food. According to appellant, in the months before Tora's death, she was eating four large cans of dog food a day but "wasn't gaining" weight. On April 29, 2019, while appellant was walking Tora, an unidentified neighbor saw Tora and stated, "That looks like a torn ACL." Appellant testified that she observed Tora holding up her left hind leg approximately two-and-a-half weeks before her death. According to appellant, the swelling "didn't happen until three days prior" to the dog's death, and once she saw that Tora was in pain, she applied ice and heat to Tora's leg and administered Tylenol.

Appellant claimed that the evening before Officer Hobgood seized Tora, she and her boyfriend discussed whether to have the dog euthanized because they "tried everything" and she was "not getting any better." She also stated that she messaged a veterinary clinic to schedule an appointment the morning Tora was seized. Appellant described the "last couple of weeks" of Tora's life as "normal[,] except . . . her leg was bothering her." During that time, appellant and her boyfriend would carry Tora outside, and she would lay on a blanket under a "tent thing," but they

wouldn't leave her "outside long because it was hot."  Appellant said that she brought food and water out for Tora.

Appellant admitted that she let Tora "go a little long," but she denied "intentionally inflict[ing] pain" on the dog and stated that she was "trying everything" to help her.  She reiterated that she gave Tora food and water and that she loved the dog.  According to appellant, Tora was inside the air-conditioned camper "most of the time" and "there were large bowls of water and food" for her.

In rebuttal, Dr. Mims stated that it would be "unusual" for a dog with Tora's level of emaciation to be eating four large cans of food per day.  He offered two possible explanations for Tora's level of emaciation: either she was not eating, or she was eating adequately but her body was not absorbing nutrients, possibly due to cancer.  While Dr. Mims could not "rule[] out" any of the potential causes for Tora's condition, he "maintain[ed] [that] it would have taken this dog months to lose [the] amount of body weight" she did.

The court convicted appellant of felony animal cruelty.  The court found appellant's testimony that she fed Tora four cans of dog food per day not credible, given the pictures of Tora and Dr. Mims's description of her condition.  Using its "common sense and . . . observations," the court found that Tora "was not adequately provided for over an extended length of time."

ANALYSIS

Appellant challenges the sufficiency of the evidence to support her animal cruelty conviction under Code § 3.2-6570(F), asserting that the Commonwealth failed to prove that she willfully inflicted inhumane injury or pain upon Tora and that she caused Tora to suffer serious bodily injury.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to

support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Vay v. Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)).

Code § 3.2-6570(F) provides, in relevant part, that "[a]ny person who . . . willfully inflicts inhumane injury or pain" on "any dog . . . that is a companion animal" and "as a direct result causes serious bodily injury to such dog . . . is guilty of a Class 6 felony." Appellant does

not contest that Tora suffered both "inhumane injury or pain" and "serious bodily injury," as used in Code § 3.2-6570(F). Rather, she contends that the Commonwealth failed to prove that she "willfully" inflicted inhumane injury on Tora and caused her serious bodily injury, because Dr. Mims could not rule out other possible explanations, such as an inappetence or illness, for Tora's emaciated state.

In construing the animal cruelty statute, we have interpreted "willful" as meaning "voluntary and intentional but not necessarily malicious." *Pelloni v. Commonwealth*, 65 Va. App. 733, 739 (2016) (quoting *Willful*, *Black's Law Dictionary* (10th ed. 2014)). "[T]he term 'willful act' [or omission] imports knowledge and consciousness that injury will result from the act [or omission] done. The act [or omission] done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury." *Id.* (second, third, and fourth alterations in original) (emphasis omitted) (quoting *Barrett v. Commonwealth*, 268 Va. 170, 183 (2004)). The Commonwealth carries its burden if it proves that the defendant "created a situation . . . 'which [made] it not improbable that injury [would] be occasioned, and [she knew], or [was] charged with the knowledge of, the probable results of [her] acts.'" *Id.* at 743 (alterations in original) (quoting *Barrett*, 268 Va. at 184).

Although Dr. Mims could not definitively conclude that Tora's extreme emaciation resulted from a lack of adequate food and water, the Commonwealth presented substantial circumstantial evidence supporting that conclusion. "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (quoting *Pijor*, 294 Va. at 512). "When examining an alternate hypothesis of innocence, the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating

evidence renders the hypothesis of innocence unreasonable." *Williams v. Commonwealth*, 71 Va. App. 462, 485 (2020) (quoting *Vasquez*, 291 Va. at 250). "The fact finder 'determines . . . whether to reject as unreasonable the hypotheses of innocence advanced by a defendant.'" *Young v. Commonwealth*, 70 Va. App. 646, 654 (2019) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)). "Consequently, whether the evidence excludes all reasonable hypotheses of innocence is a 'question of fact,' and like any other factual finding, it is subject to 'revers[al] on appeal only if plainly wrong.'" *Id.* (alteration in original) (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016)).

After examining Tora on July 5, Dr. Mims concluded that she was "completely emaciated." She showed symptoms of dehydration and cardiac insufficiency, as well as weakness, apathy, a "complete lack of muscle," and "heavy flea infestation." Importantly, Dr. Mims testified that it would have taken months for Tora to reach such an extreme state of emaciation and it would be "unusual" for a dog to reach this level of emaciation while eating four cans of food per day. Additionally, Jones, appellant's neighbor, testified that she saw Tora outside alone almost every afternoon, never saw anyone give the dog food or water, and saw Tora trying to eat nuts off the ground the day animal control seized her. Further, having rejected as not credible appellant's testimony that she adequately fed Tora and "tried everything" to help her, the court was entitled to "draw the reasonable inference that [her] explanation was made falsely in an effort to conceal [her] guilt." *Covil v. Commonwealth*, 268 Va. 692, 696 (2004).

Moreover, uncontested evidence established that, although appellant knew Tora had been losing weight for months and was in pain and unable to walk due to a hind-leg injury, she never sought veterinary care for the dog. Indeed, photographs demonstrated that Tora's dire condition was readily apparent—as Dr. Mims testified, "virtually every bone" in Tora's body was showing. Appellant's failure to seek veterinary care despite knowing of Tora's serious health issues for a

- 7 -

substantial period of time evinces appellant's reckless disregard for the dog's well-being. *See*

*Pelloni*, 65 Va. App. at 744 (finding that "appellant's refusal to provide basic veterinary care for

[the dog] demonstrate[d] his intentionality and his awareness of the likely result of his inaction").

Viewing all of the evidence in the light most favorable to the Commonwealth, a

reasonable trier of fact could find, as the court did, that appellant failed to provide adequate care

to Tora and "created a situation . . . 'which [made] it not improbable that injury [would] be

occasioned'" and knew "the probable results of [her] acts," thereby willfully inflicting inhumane

injury and pain on her and causing serious bodily injury. *Id.* at 743 (second and third alterations

in original) (quoting *Barrett*, 268 Va. at 184).[2]

CONCLUSION

For the foregoing reasons, we affirm appellant's conviction for felony animal cruelty.

*Affirmed.*

---

[2] Given our conclusion that the evidence sufficiently proved that appellant caused Tora to suffer serious bodily injury, we need not address appellant's argument concerning whether euthanasia was necessary. *See* Code § 3.2-6570(F) (requiring that a defendant's willful actions caused "serious bodily injury to [the] dog . . . *or* the euthanasia of such animal" (emphasis added)).